*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2012-299

APRIL TERM, 2013

In re J.D.                                    }        APPEALED FROM:
                                              }
                                              }        Human Services Board
                                              }
                                              }
                                              }        DOCKET NO. M-09/10-441

In the above-entitled cause, the Clerk will enter:

Petitioner appeals pro se from a Human Services Board decision denying a request to expunge his name from the child protection registry. Petitioner essentially contends the Board erred in denying the request because the evidence demonstrated that he no longer presents a risk to the safety or well-being of children. We affirm.

The facts may be summarized as follows. The law requires the Department for Children and Families to maintain a "child protection registry" containing "a record of all investigations that have resulted in a substantiated report" of child abuse or neglect. 33 V.S.A. § 4916(a)(1). A person whose name has been entered in the registry may file a request with the Commissioner "seeking a review for the purpose of expunging" a registry record. 33 V.S.A. § 4916c(a).

In early 2010, petitioner contacted the Department seeking to expunge his name from the child protection registry. Petitioner had been entered in the registry based on two substantiations by the Department, one for sexual abuse in August 1996, and one for neglect in June 2004. Petitioner met with a reviewer for the Department and submitted materials in support of his request, including four character-reference letters.

In September 2010, the reviewer—on behalf of the Commissioner—issued a written decision denying the request. The reviewer noted at the outset that petitioner did not contest either substantiation decision, and that he did not want the Department to wait until the conclusion of a related family court proceeding before acting on his request to expunge his name. The reviewer summarized the two underlying substantiated incidents as follows. In August 1996, the Department determined that petitioner, then fourteen years old, had sexually abused an eight-year-old cousin. Petitioner was adjudicated a delinquent as a result, placed on probation, directed to undergo sex-offender counseling, and discharged from probation in 2000 when he reached the age of eighteen.

The second matter involved a 2004 substantiation of neglect of two young children— A.D., petitioner's one-year old son with his partner G.C., and G.C.'s two-year-old child J.C. Based on DCF records, the reviewer noted that a DCF investigation had found the trailer in which the couple and the children lived to be in an extremely unsanitary condition and the children to be suffering from severe neglect. A CHINS petition was pending in November 2004

when petitioner, G.C., and the children moved without prior notice to Montana. There, records indicate that the children were taken into custody in March 2005 by the Montana Department for Public Health and Human Services. The Montana Supreme Court ultimately affirmed an order terminating petitioner's parental rights to A.D. and G.C.'s parental rights to J.C., observing that the evidence of abuse and neglect was "overwhelming." In re J.C. & A.D., 2008 MT 127, ¶¶ 50, 52, 183 P.3d 22.

Turning to the statutory criteria for determining whether petitioner had established that he no longer presented "a risk to the safety or well-being of children," the reviewer focused primarily on whether the circumstances indicated that "a similar incident would be likely to recur" and whether petitioner had engaged in any activities such as therapy, employment or education that would "reflect upon [his] changed behavior." 33 V.S.A. § 4916c(b)(4)(5). The reviewer described a 1997 psychosexual evaluation of petitioner, and his ensuing treatment. In 1998, his therapist described a lifetime of troubling sexual thoughts dating back to a very early age and ongoing, petitioner's unwillingness to abide by a variety of risk management strategies, and his knowing engagement in high risk activities and failure to report his lapse behavior. Although petitioner claimed to have completed the sex-offender treatment, the reviewer noted that he had not provided any documentation showing successful discharge from the program, records indicated that his participation was "inconsistent," and DCF records reflected that his therapists had concluded that he needed a level of intervention that was not being met. The reviewer further found that petitioner had not pursued or undergone any additional sex-offender treatment since 2000 and that a 2005 psychosexual evaluation in Montana, based solely on petitioner's own self-report, found petitioner to be at a "moderate" risk to reoffend.

With respect to the 2004 substantiation of neglect, the reviewer observed that DCF records at the time characterized petitioner as "very resistive" to recommended services, and indicated that "little progress had been made" prior to his move to Montana. Petitioner claimed that Montana had been "wrong" to terminate his parental rights despite his stipulation there to parental abuse and neglect and what the Montana Supreme Court characterized as "overwhelming evidence" of severe neglect.

The reviewer also described character-reference letters submitted by petitioner including one from a man who had known petitioner for two years and one each from G.C.'s mother and father—all expressing confidence in petitioner's ability to safely parent his new child. In addition, the reviewer noted that the letter from a Montana child care agency, dating from September 2005, indicated that petitioner had completed a "parenting inventory" and recommended an additional parenting program.

Based on the foregoing, the Department reviewer found that petitioner had failed to show that he no longer presented a risk to the safety or well-being of children. Despite the documented concerns regarding his sexual attraction to young children, petitioner had presented no documentation that he had completed additional sex offender treatment. Despite the extreme neglect that had resulted in the termination of his parental rights to A.D., petitioner had presented little documented evidence of progress in his ability to care safely and adequately for R.D., and had shown "minimal insight" into these concerns. As for the character-reference letters, the reviewer observed that they tended to "minimize" petitioner's considerable past problems, and she noted that G.C.'s father—one of petitioner's character witnesses—was himself on the registry for a sex offense involving a child, casting further doubt on petitioner's judgment in such matters. The reviewer also noted a then-current ongoing DCF investigation into potential risk of

2

neglect and sexual abuse petitioner posed to his youngest child. Given these factors, the reviewer concluded that it was not appropriate to remove petitioner's name from the child protection registry.

Petitioner appealed the decision to the Human Services Board, which reviewed the record, heard additional argument, and issued a decision in July 2012. Although review was on the record, additional facts noted by the Board were the dismissal in January 2011 of the CHINS petition that had been pending at the time of the review, the birth of another child to petitioner and G.C. in January 2012, and a letter, dated January 20, 2011, from the director of a sex-offender treatment program who had evaluated petitioner while the CHINS petition was pending. The letter expressly declines to address the issue of petitioner's inclusion on the child protection registry. On the "narrowly drawn question" of the risk presented by petitioner to sexually abuse R.D., the letter concludes that, based on "static" or historical factors, petitioner would fall in the "low risk range" for future sexual offenses, while also cautioning that petitioner should be monitored for "dynamic" or situational risk factors, and recommending that he engage in ongoing psychotherapy and psychiatric screening.

Based on its review, the Board concluded that the Department did not abuse its discretion in concluding that petitioner had failed to carry his burden to show that expungement was appropriate, and affirmed the order denying the request. This pro se appeal followed.

The scope of our review is limited. Petitioner bears the burden of proving that he "no longer presents a risk to the safety or well-being of children." 33 V.S.A. § 4916c(b). On appeal of an expungement decision to the Board, the Board is restricted to determining whether, on the record, the Department abused its discretion. 33 V.S.A. § 4916c(e). The question before this court is whether the Board erred in concluding that the Department did not abuse its discretion in denying the expungement request. We, like the Board, must apply the deferential abuse-of-discretion standard in evaluating the Department's decision. See Turner v. Roman Catholic Diocese, 2009 VT 101, ¶ 10, 186 Vt. 396 (abuse of discretion standard requires this Court to uphold ruling "unless the [lower tribunal's] discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable." (quotation omitted)).

Petitioner appears to raise several claims concerning the sufficiency of the evidence to support the Board's decision. First, he contends the Board failed to properly consider the most recent psychosexual evaluation set forth in the letter dated January 20, 2011. The statutory scheme governing petitions for expungement provides, however, that the Board's review "shall be on the record," 33 V.S.A. § 4916c(e), and the evaluation in question was not submitted to the Department reviewer; indeed, it was not completed until after the review was complete. Moreover, as noted, the evaluation did not purport to address the propriety of petitioner's expungement request, and its assessment of petitioner as a "low risk" to sexually assault his new child was qualified by a recommendation that he receive counseling and on-going monitoring, neither of which had he obtained.

Petitioner also asserts that the Department reviewer and the Board ignored evidence that he is raising two young children without any proven incidents of sexual abuse, that the children are developing normally, that a home health nurse visited his home multiple times after R.D. was born and did not identify any concerns about the home he was providing his child, and that the DCF investigations that were open during the review process had since been closed because he

posed no risk to his children. Again, the Department did not err in noting the existence of open DCF investigations at the time of its review, since the investigations were, at that time, ongoing.

Moreover, evidence that petitioner's child was developing normally, that visiting nurses did not express concerns about the well-being of his own child in his home, and that the Department apparently concluded that it could not prove a present risk of neglect or abuse to petitioner's own child is most relevant to an investigation of potential abuse or neglect by petitioner of his own child. The expungement question—whether petitioner has demonstrated that he no longer posed a risk to the safety or well-being of children—is a related but different question. The Department found that as of 1997 and 1998 petitioner struggled with troubling sexual thoughts of young children, that he had failed to demonstrate that he had completed sex offender treatment or other psychosexual treatment, that a 2005 psychosexual evaluation found him to pose a "moderate" risk of reoffending, and that he showed minimal insight into the conduct that led to his substantiation for neglect. Given these findings, we cannot conclude that the Department abused its discretion in denying petitioner's expungement request. See In re K.G., 171 Vt. 529, 530 (2000) (mem.) (noting that we will not reverse expungement ruling unless we find "abuse as a matter of law"). Accordingly, we discern no basis to disturb the Human Service Board's judgment.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice

4